**UNITED STATES of America**

v.

**Mutulu SHAKUR, a/k/a "Doc," a/k/a "Jeral Wayne Williams," Sekou Odinga, a/k/a "Nathaniel Burns," a/k/a "Mgabasi," a/k/a "Mugubasi," a/k/a "Eddie Holmes," a/k/a "Lou," Cecil Ferguson, a/k/a "Mo," a/k/a "Chui," Edward Lawrence Joseph, a/k/a "Edward Lawrence," a/k/a "Jamal," a/k/a "Tony," a/k/a "J.R.," William Johnson, a/k/a "Bilal Sunni-Ali," a/k/a "Spirit," Silvia Baraldini, a/k/a "Louise," Susan Rosenberg, a/k/a "Elizabeth," Cheri Dalton, a/k/a "Nahanda," Iliana Robinson, a/k/a "Naomi," Nilse Cobeo, a/k/a "Nilse Lawrence," a/k/a "Ginger," a/k/a "Gigi," a/k/a "Giovanni Correa," and Alan Berkman, Defendants.**

No. SSS 82 Cr. 0312 (KTD).

United States District Court,
S.D. New York.

Aug. 10, 1983.

See also D.C., 570 F.Supp. 336.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for the Government; Robert S. Litt, Stacey J. Moritz, Asst. U.S. Attys., New York City, of counsel.

Sekou Odinga, pro se defendant.

Jesse Berman, New York City, for defendant Cecil Ferguson.

William Mogulescu, New York City, for defendant Edward Joseph.

Chokwe Lumumba, Detroit, Mich., Lynne Stewart, New York City, for defendant William Johnson.

Susan Tipograph, New York City, for defendant Sylvia Baraldini.

Lawrence Stern, New York City, for defendant Iliana Robinson.

KEVIN THOMAS DUFFY, District Judge:

On August 3 and 4, 1983, I held a *Wade* hearing outside the presence of the jury to determine the admissability of witness Sondra Margo Mitchell's in-court identification of defendants Ferguson, Joseph, and Baraldini. I found that the pretrial identification procedures followed by the Federal Bureau of Investigation ("FBI") and the United States Attorney's Office were not suggestive and thus I permitted Ms. Mitchell to identify the above defendants before the jury. In addition, her identifications had an independent basis apart from the pretrial identifications. The following shall constitute my findings of fact.

Ms. Mitchell testified that she became friends with Mutulu Shakur while both of them were employed at Lincoln Hospital. During the course of their friendship, Ms. Mitchell lent Mr. Shakur the use of her apartment in return for compensation. Although Ms. Mitchell usually was not present when Mr. Shakur used her apartment, December 22, 1980 was an exception. She testified that on that date, four males and four females met in her apartment, including Shakur and the defendants Joseph and Baraldini.

The *Wade* hearing was held to evaluate the credibility of Mitchell's identifications and to enable me to determine whether the "pretrial identification procedures employed were in fact suggestive." *Solomon v. Smith,* 487 F.Supp. 1134, 1141 (S.D.N.Y. 1980), *aff'd,* 645 F.2d 1179, 1186 (2d Cir. 1981). If the procedures utilized were suggestive, I must then decide by considering the "totality of circumstances" whether Mitchell's in-court identifications are so tainted by the suggestive procedures to be rendered inadmissable. *See Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1973). These safeguards are to insure that the defendants' rights are not violated by allowing identification procedures that present "a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968).

Ms. Mitchell's candid testimony was credible. Even though her motive for cooperating with the FBI may well have been to avoid prosecution, this fact did not affect

her credibility. Her matter of fact recounting of the events in question and her contact with defendants Joseph, Ferguson, and Baraldini was entirely believable.

The FBI identification techniques utilized with this witness were not suggestive. Ms. Mitchell was visited by FBI Agent Vizi and Detective Haughie at her Mount Vernon apartment on June 30, 1982. During that visit the FBI told Mitchell that they were aware of her association with Mutulu Shakur and the possibility of prosecution if she withheld information was explicitly mentioned. She was also shown several photographs. Among these photographs was one of Ferguson. It was shown to Ms. Mitchell, however, only after she had described an individual named "Chui." This alone, moreover, does not render the procedure unduly suggestive. *See Simmons v. United States.*

On July 2, 1982, Ms. Mitchell again met with the FBI at its headquarters in Manhattan.[1] Near the end of this meeting, Vizi and Haughie handed Mitchell the first stack of photographs. She was asked to identify persons she knew and persons who were present at the December 22, 1980 meeting at her apartment. Out of the stack of photographs, Ms. Mitchell picked out, among others, defendants Ferguson and Joseph. This procedure was patently unsuggestive, and alone, would render Ms. Mitchell's identifications of Joseph and Ferguson admissable.

Her description of those attending the December 22 meeting included a white heavy-set woman, but she was unable to identify this woman in the photos she initially was given. Agent Vizi then added, outside of Ms. Mitchell's presence, three or four other pictures of heavy-set white women to the stack at different intervals. Ms. Baraldini's picture was among the new additions and the witness identified her after going through the entire stack of photographs a second time. The complete stack of photos, Government Exhibit 3515G, had 137 pictures; forty-four were of black males, twenty were of white males, twenty-

one were of black females, and fifty-two were of white women—thirteen of whom appeared to be heavy set. Ms. Mitchell pulled out the persons who attended the meeting and signed the back of most of the photos.[2]

Ms. Baraldini's counsel contends that the identification of her client was suggestive. The testimony of Vizi and Haughie, however, dispel this argument. The number of photographs in Government Exhibit 3515G was sufficiently large to avoid any suggestiveness. There were numerous photos of heavy-set white women in the first group shown to Ms. Mitchell and the inclusion of a few more would not be significantly noticeable. Furthermore, Vizi and Haughie merely asked Ms. Mitchell to identify persons she knew and did not direct her to the white woman. Agent Vizi aptly described the situation:

> I didn't feel that there was anyway in the world she could have memorized that stack of photographs to the extent that she would have noticed that these four photographs were different, or three photographs, whatever it was, so I thought it was—I thought it was the fairest and most I guess practical way at that point of handling the situation and that's the way we ran it.

Transcript at 8031. On the basis of the above facts, I find that Ms. Mitchell did not identify defendants Ferguson, Joseph, and Baraldini under suggestive circumstances.

Even assuming that Ms. Mitchell's initial identifications were the result of suggestive procedures, the witness' contact with each identified defendant supports her independent in-court identification. The factors to be considered in evaluating a witness' in-court identification have been explicitly delineated:

> [t]hese factors are (1) the witness's opportunity to observe the criminal at the time of the crime, (2) the degree of the witness's attention at that time, (3) the accuracy of the witness's initial description of

---

1. Ms. Mitchell also met with them on July 1, 1982.

2. She did not sign the back of the Ferguson photograph.

the criminal, (4) the certainty with which the witness first identified the suspect, and (5) the time lapse between the crime and the identification. *Solomon v. Smith,* 645 F.2d at 1186; *see Manson v. Brathwaite,* 432 U.S. 98 at 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140. Mitchell's testimony satisfied all these criteria.

### 1. Defendant Baraldini

Ms. Mitchell first saw Ms. Baraldini on December 22, 1980 at her apartment. After seeing Ms. Baraldini at the door and staying in the same room with her for a few seconds, Ms. Mitchell left the room. Approximately twenty-five minutes later Ms. Mitchell went into her bedroom to change where she again saw Ms. Baraldini. While Ms. Mitchell was getting dressed she observed Ms. Baraldini changing her clothes and putting on a wig. They were in the room together for almost a half hour and at times they were about one foot apart. Ms. Mitchell identified Ms. Baraldini in-court after only a momentary pause. Considering all the factors enunciated in *Solomon,* I find Ms. Mitchell's identification of Ms. Baraldini was not tainted and was free of suggestive influences.

### 2. Defendant Joseph

Ms. Mitchell met Joseph at least twice. One time was on December 22, 1980, at her apartment. Mutulu Shakur introduced him as Jamal at that time. Ms. Mitchell testified that she looked principally at him during the five to ten minutes that she was in the living room of her apartment.

Mitchell also stated that she saw him on a second occasion at a downtown westside restaurant, sometime between June and October, 1981. This time she saw him for several hours during dinner and later at his apartment. These facts adequately establish an independent basis for her identification of Joseph.

### 3. Defendant Ferguson

Mitchell testified that she first met Ferguson at Lincoln Hospital in about 1975. Mutulu Shakur introduced him as "Chui."

Ms. Mitchell subsequently saw Ferguson five to seven more times socially before he went to prison. She later saw him one more time after he was released. This also was in a social context. These numerous contacts establish an independent basis for Ms. Mitchell's identification.

In sum, I find that the identification procedures utilized by the government were not unduly suggestive. In addition, I conclude that in any case an independent basis for Ms. Mitchell's identifications exists permitting her in-court identification.

SO ORDERED.