UNITED STATES of America

v.

Mariano SANCHEZ, a/k/a "The Boss", Miguel Rodriguez, a/k/a "Michael Rodriguez", Elsa Sanchez, a/k/a "Cuca", Luis Robles, a/k/a "Papo", Jose Rivera, a/k/a "Fury", Edward Giusti, a/k/a "Colorao", a/k/a "Big Red", William Giusti, a/k/a "Colorao Chiquito", a/k/a "Little Red", Hector Torres, Maurice Fane, a/k/a "Moe", Raymond Aponte, a/k/a "Ray", Benjamin Grant, a/k/a "Ben", Carmen Fred, a/k/a "Milagros" and Carlos Laureano.

Crim. No. B–87–35 (TFGD).

United States District Court,
D. Connecticut.

Dec. 7, 1987.

Linda Lager, Denis King, Asst. U.S. Attys., Stanley Twardy, Jr., U.S. Atty., D. Conn., Bridgeport, Conn., for U.S.

Richard T. Meehan, Jr., James J. Ruane, Meehan and Meehan, Bridgeport, Conn., for Mariano Sanchez.

Ralph L. Palmesi, Palmesi, Kaufman, Portanova & Goldstein, P.C., Trumbull, Conn., for Miguel Rodriguez.

Thomas E. Minogue, Jr., Kleban and Samor, Southport, Conn., for Elsa Sanchez.

John R. Gulash, Jr., Bridgeport, Conn., for Luis Robles.

Alan Bleiman, Fairfield, Conn., for Jose Rivera.

William M. Bloss, Jacobs, Grudberg, Belt and Dow, P.C., New Haven, Conn., for Edward Giusti.

Howard C. Eckenrode, Milford, Conn., for William Giusti.

Frank J. Riccio, Bridgeport, Conn., for Hector Torres.

Stanley P. Atwood, Daniel B. Glass, Sherwood, Garlick, Cowell, Diviney & Atwood, Westport, Conn., for Maurice Fane.

Sarah A. Chambers, Asst. Fed. Public Defender, New Haven, Conn., for Benjamin Grant.

Howard T. Owens, Jr., Stephen F. Donahue, Elaine M. Scanlon, Owens & Schine, Bridgeport, Conn., for Raymond Aponte.

Richard Emanuel, Bridgeport, Conn., for Carmen Fred.

Warren A. Luedecker, Trumbull, Conn., for Carlos Laureano.

## RULING ON JOINT MOTIONS TO SUPPRESS WIRETAP EVIDENCE

DALY, Chief Judge.

The indictment in the above-captioned matter is the product of a joint investigation by state, local, and federal law enforcement agencies. The eleven counts of the indictment charge the thirteen defendants with violations that involve narcotics possession, distribution, and conspiracy. In the instant motions the defendants have mustered a joint and sundry attack on the application for, issuance and execution of the wiretap, # 87–06, issued by a state wiretap panel. The defendants bifurcated their motions by way of those issues for which evidentiary hearings were sought, and those which they submitted on the papers. The Court already has denied requests for hearings on all of the former issues except minimization. Minimization is not the subject of this ruling. As to the remaining issues, few merit lengthy discussion.

1. *Probable Cause for Issuance of Wiretap Order*

The defendants claim that the supporting affidavit and application for the wiretap order lacked a sufficient articulation of probable cause as required by CONN.GEN. STAT. § 54–41d (the wiretap panel must find on the facts submitted in the application nine essential bases for probable cause). The factors determined under § 54–41d are to be assessed in accordance with the standard set forth in § 54–41c; essentially a codification of the "Aguilar–Spinelli" test for probable cause. *State v. Ross*, 194 Conn. 447, 463, 481 A.2d 730 (1984); *see Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Although the federal standard may be less stringent, *see Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (assessment of the "totality of the circumstances"), the government concedes it is the state standard that is applicable in this case. *See United States v. Sotomayor*, 592 F.2d 1219, 1225 (2d Cir.) (When using a state wiretap in a federal prosecution, "more stringent state statutory requirements that are designed to protect an individual's right to privacy" should be applied.), *cert. denied* 442 U.S. 919, 99 S.Ct. 2842, 61 L.Ed.2d 286 (1979).

The defendants have attempted to particularize specific instances in the affidavit where the affiant failed to comply strictly with the requirements of the "Aguilar–Spinelli" test. More specifically, it is suggested that there are instances in which the affiant failed to disclose: (1) some of the underlying circumstances relied upon by the person who provided the information to the affiant; and (2) some of the underlying

circumstances from which the affiant concluded (a) that the informant, whose identity need not be disclosed, was credible, or (b) that his information was reliable. *See, e.g., Ross,* 194 Conn. at 463 n. 14, 481 A.2d 730 (enumerating the requirements of *Aguilar*). It is not necessary to review each of these claims raised by the defendants. It is enough for the Court to note that the application of "Aguilar–Spinelli" that the defendants urge is not sufficiently comprehensive.

■ The Court is not required to comb "through the affidavit item by item and relate these items to the statutory *Aguilar–Spinelli* test." *State v. Levine,* 5 Conn. App. 207, 215, 497 A.2d 774, *cert. denied,* 197 Conn. 816, 500 A.2d 1337 (1985). Rather, the affidavit must be read "in a common sense manner," *State v. Ralston,* 7 Conn.App. 660, 673, 510 A.2d 1346 (*quoting, Ross,* 194 Conn. at 468, 481 A.2d 730), *cert. granted,* 201 Conn. 808, 515 A.2d 380 (1986), and must be canvassed as a whole when measured against *Aguilar* standards. *Ralston,* 7 Conn.App. at 672, 510 A.2d 1346. Connecticut courts that have applied the "Aguilar–Spinelli" test have looked to several factors beyond those which a strict construction of the test in § 54–41c might require. These factors include "corroboration of the information by the police, the existence of a declaration against penal interest, or reputation and past criminal behavior which could form a substantial basis for crediting hearsay." *Ross,* 194 Conn. at 465–66, 481 A.2d 730 (citations omitted); *see also Ralston,* 7 Conn.App. at 672–73, 510 A.2d 1346. "Dovetailing of information from different sources also supplies corroboration." *Ralston,* 7 Conn.App. at 673, 510 A.2d 1346, (*citing, State v. Kimbro,* 197 Conn. 219, 232, 496 A.2d 498 (1985)).

■ The Court has reviewed the entire affidavit and application for the wiretap order in light of the standards here enunciated. After according due deference to the finding by the state panel, *see, e.g., Mapp v. Warden,* 531 F.2d 1167, 1172 (2d Cir.) (state court's findings on issues regarding search and seizure presumptively are correct), *cert. denied,* 429 U.S. 982, 97 S.Ct. 498, 50 L.Ed.2d 592 (1976), and after a review of the defendants' brief, as well as the government's brief and endnotes attached thereto, the Court is more than satisfied that the affidavit and application for 87–06 contained sufficient probable cause to support the issuance of the wiretap order.

Several other points raised by the defendants in their brief on this issue actually speak to the feasibility of other investigative means. The Court rules upon that issue in section 6, *infra.*

### 2. Staleness

The defendants have launched a three-pronged attack on the staleness of the information in the affidavit supporting wiretap application 87–07. First, the defendants argue that the information in the affidavit is "stale" in violation of CONN.GEN. STAT. § 54–41c(7) as that section has been construed in *Ralston,* 7 Conn.App. at 681–83, 510 A.2d 1346, the highest relevant authority in Connecticut to have confronted the issue. Alternatively, they argue that *Ralston* was not decided correctly. The third prong of attack challenges the compliance of ¶ 8 of application 87–07 with § 54–41c.

■ In essence, to support a finding of probable cause, the Connecticut wiretap statute requires that the wiretap applicant not rely on any facts and circumstances that are more than twenty days old (i.e., more than twenty days next preceeding the date of the application). § 54–41c(7). When the alleged criminal activity is of a continuing nature, however, "the twenty day statutory rule is not violated if the finding of probable cause rests on facts and circumstances discovered within the period in addition to facts and circumstances discovered beyond the period." *Ralston,* 7 Conn.App. at 681–82, 510 A.2d 1346 (wiretap to detect continuing course of illegal drug selling). The *Ralston* court recognized that probable cause is not found in a "single block of precast concrete," but rather, is a "mosaic" that requires one to exercise common sense in piecing together

information that ultimately may lead to a conclusion of probable cause. *Ralston*, 7 Conn.App. at 682, 510 A.2d 1346 (citation omitted). It is the application of this common sense that allows a less constrictive interpretation of the twenty day rule, one that does not "thwart the purpose" of the wiretap statute. *Id.* It is an application of this same common sense that allows the reasonable person to conclude that "[t]he illegal sale of drugs is a criminal activity which is not necessarily confined to a twenty day period, as if it were inherently akin to the traditional Thanksgiving-to-Christmas retail sales period." *Id.* Thus, it would be unreasonable to conclude that none of the information discovered beyond the twenty day period may be used to establish the probable cause necessary to ferret out the type of continuing criminal activity alleged in the instant wiretap affidavit. *Id.*

■ The applicable Connecticut standard is not inconsistent with the federal standard. *Id.* at 683, 510 A.2d 1346. Under federal constitutional limitations on staleness, if the wiretap affidavit alleges criminal activity of a continuing nature, as contrasted with isolated instances of illegal acts, "the passage of time between the last described act and the presentation of the application becomes less significant." *Id.* (*quoting, United States v. Martino*, 664 F.2d 860, 867 (2d Cir.1981), *cert. denied*, 458 U.S. 1110, 102 S.Ct. 3493, 73 L.Ed.2d 1373 (1982)). Thus, if a continuing operation clearly is alleged, it is sufficient for purposes of staleness if the events that are alleged to have occurred within the statutory period (and which may be insufficient, standing alone, to establish probable cause), either relate back to the earlier information, or indicate that the activity is still continuing. *Martino*, 664 F.2d at 867; *Ralston*, 7 Conn.App. at 681–82, 510 A.2d 1346.

■ The thrust of the first prong of the defendants' attack is that the only incidents alleged in the affidavit to have occurred within the statutory period are either unreliable, or are too insignificant to be considered in an articulation of probable cause.

The attack is sufficient neither to sustain a review by this Court, nor to overturn the conclusion of the state court, whose determination of probable cause is entitled to great deference. *See, e.g., Mapp*, 531 F.2d at 1172; *cf. Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983) (finding of probable cause by state judicial officer will be overturned if it lacks a substantial basis); *Martino*, 664 F.2d at 867; *United States v. Shipp*, 578 F.Supp. 980, 985 (S.D.N.Y.1984) (Weinfeld, J.), *aff'd*, 754 F.2d 1427 (2d Cir.), *cert. denied*, 472 U.S. 1019, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985).

The relevant twenty day period runs from April 21, 1987 through May 10, 1987, the date "next preceeding" the date of the application, May 11, 1987. *See* § 54–41c(7). The Court shall review briefly the facts alleged in the affidavit to have occurred during that period. First, on April 21, 1987, Sanchez was arrested by local police and charged with assault. At the time, he gave his address as 139 Seaver Circle, Bridgeport, and his phone number as 371–5375, the address and number that are the subject of application 87–07 (*see* Aff. ¶ R(13)). The earlier information in the affidavit established that Sanchez was the kingpin of a narcotics network that appeared to have a significant connection to 139 Seaver Circle and the phone listed at that address.

■ Second, the affidavit indicates that Edward Giusti, by then a suspected narcotics trafficker and an associate of Sanchez, had placed, between April 1 and April 24, sixty-seven calls from his mobile phone to 371–5375 (Aff. ¶ R(14)). The defendants discount this as illusory, for it is not clear from the analysis of the toll records, which were seized on May 6, how many, if any, calls were made on or after April 21. It is not dispositive that the toll records analysis did not indicate how many calls were made within the twenty day period. When evaluating for purposes of probable cause allegations concerning continuing criminal activity, the timeliness of an act may be dated at the time the agent learned of that act, rather than on the date the act actually

occurred. *See United States v. Hyde*, 574 F.2d 856, 864–65 (5th Cir.1978). This especially is true where, as here, the date of occurrence and the date of discovery are relatively close in time. *See id.* The toll records were not discovered until May 6, well within the statutory period.

Similarly, ¶ R(15) alleges also that on May 6, information was received that 2,114 calls had been made from 371–5375 to over 368 different numbers between February 3 and March 8. When considered in conjunction with the Giusti toll records, it reasonably could be inferred that an unusually high degree of phone activity was continuing to take place on 371–5375. Furthermore, it would not be unreasonable to conclude from the information in ¶ S of the affidavit that as of May 7 over sixty daily calls were being made from 371–5375 to beepers and mobile phones, which, it may be inferred, belonged to those persons alleged by earlier information in the affidavit to be members of the narcotics trafficking network. Clearly, the inferences that may reasonably be drawn from the toll records discovered on May 6 & 7 are bolstered by independent information earlier in the affidavit; and when taken together with that earlier information, is sufficiently reliable and substantial to conclude that there existed probable cause of an ongoing and "extensive criminal enterprise that relied upon the telephone." *Shipp*, 578 F.Supp. at 986 (Pen register information may not, by itself, support a finding of probable cause, but "may serve as a link in the chain of evidence."), & n. 13 (*citing, United States v. Tehfe*, 722 F.2d 1114, 1119 (3d Cir.1983)); *See* Section 1, *supra*.

■ The facts discussed above must be considered in light of the ongoing nature of the narcotics trafficking operation, and the *modus operandi* allegedly employed by Sanchez and his associates. The affidavit as a whole indicates that the network existed as early as 1985, and was continuing from at least April 1986 through April 1987. The affidavit also indicates that the network was led by Sanchez, who, as late as April 21, 1987, still resided at 139 Seaver Circle. In addition, members of the net-

work heavily relied upon the use of the telephones to carry out their activities. From the facts and circumstances which occurred within the statutory period, it reasonably could be inferred that the criminal activity continued into the statutory period. In addition, these facts support the conclusion that the affidavit as a whole provides probable cause. The Court is not persuaded that the conclusion of the wiretap panel lacked a substantial basis, nor that its conclusion was founded upon stale evidence.

The second prong of the defendants' attack invites this Court to overrule *Ralston*. In their argument, the defendants fail to raise any novel issue, nor any argument that the *Ralston* court apparently did not consider. The Court declines the invitation without hesitation.

The defendants's third prong does not warrant discussion and is rejected substantially for the reasons set forth in the government's response.

### 3. *Compliance of the Wiretap Order With Section 54–41e*

■ In relevant part, § 54–41e requires that a wiretap order "be accompanied by a written statement of the issuing panel setting forth in detail its determination" of probable cause "and the grounds therefor." The defendants argue that the panel failed to set forth the "grounds" for its determination, but rather incorporated by reference the affidavit submitted with the application. It readily is conceded that the panel did incorporate the affidavit by reference to satisfy the statutory requirement, yet contrary to the defendants' argument, the panel's approach expressly has been condoned in Connecticut. *State v. Chiarizio*, 8 Conn.App. 673, 681–86, 514 A.2d 370, *cert. denied*, 201 Conn. 809, 515 A.2d 379 (1986). In light of this authority, this requirement of § 54–41e was met, and the defendants' claim must summarily be rejected.

■ Section 54–41e(9) requires that the wiretap order include the period of time during which the interception is authorized, and "a statement that the interception shall

automatically terminate when the *desired communication* has been first obtained." (emphasis added). Paragraph D of order 87–06 states that "[t]he interception shall automatically terminate when the *authorized objective* has been first obtained." It is clear that the language employed in ¶ D comports with § 54–41e(11). It is equally clear, and the defendants concede, that within the context of the application and affidavit, the "desired communication" and "authorized objective" are functional equivalents. The order complies with § 54–41e.

To the extent the defendants argue that interceptions went beyond that indicated in the "authorized objective," the claim is rejected for the reasons set forth in the Court's *Preliminary Ruling on Pending Motions to Suppress,* Dec. 1, 1987.

### 4. *Failure to Give Post–Interception Notice*

Notwithstanding any post-interception notice that may be required under either the federal or Connecticut wiretap statutes, the defendants have not come forward with sufficient facts, which, if proven, would justify an evidentiary hearing. *United States v. Culotta,* 413 F.2d 1343, 1345 (2d Cir.1969), *cert. denied,* 396 U.S. 1019, 90 S.Ct. 586, 24 L.Ed.2d 510 (1970). The motion is denied for a lack of showing.

### 5. *Failure to Timely Seal*

■ The Connecticut wiretap statute, requires a recorded interception to be sealed "immediately upon the expiration" of the authorized period of interception. § 54–41i. The requirement expressly is intended to "protect the recording from editing or other alterations." *Id.* Because the sealing requirement is one "relating solely to the later preservation of the evidence, as contrasted to the methods used to obtain it," federal standards shall apply. *United States v. Sotomayor,* 592 F.2d 1219, 1225–26 (2d Cir.), *cert. denied,* 442 U.S. 919, 99 S.Ct. 2842, 61 L.Ed.2d 286 (1979). The federal statutory sealing requirement is identical to § 54–41i. *See* 18 U.S.C. § 2518(8)(a). When a delay of three to five days before sealing occurs, this Circuit re-

quires the government to submit to the Court an *ex parte* and *in camera* affidavit that sets forth a satisfactory explanation for the delay. *United States v. Massino,* 784 F.2d 153, 158–59 (2d Cir.1986). On June 4, 1987, the government complied with that procedure. *See* Government's Exhibit 2 (Affidavit of Sgt. Petrowski).

### 6. *Normal Investigative Procedures*

■ The defendants claim that the wiretap application failed to provide a "full and complete statement" why normal investigative procedures were not sufficient. *See* 18 U.S.C. § 2518; CONN.GEN.STAT. § 54–41c. To satisfy this requirement the government need not prove that "every other imaginable method of investigation has been unsuccessfully attempted," *United States v. Fury,* 554 F.2d 522, 530 (2d Cir.), *cert. denied,* 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977), rather it must be demonstrated with "specific, detailed reasons" why normal investigative procedures would not succeed in obtaining the investigatory objective. *United States v. Ruggiero,* 726 F.2d 913, 924 (2d Cir.), *cert. denied,* 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984). On the present record, and with the deference properly accorded to the wiretap panel, *id.,* the Court is not persuaded that the affidavit failed to state adequately why normal investigative procedures were not sufficient.

■ The defendants also claim that there are omissions from the affidavit as it relates to the inadequacy of normal investigative methods. For the defendants to succeed on this challenge, they initially must show by a preponderance of the evidence that there are omissions of material fact from the application and supporting affidavit. *United States v. Ferguson,* 758 F.2d 843, 848 (2d Cir.) (*citing, Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)), *cert. denied,* 474 U.S. 841, 106 S.Ct. 124, 88 L.Ed.2d 102 (1985). The Court has considered the arguments of defense counsel as well as their lengthy proffer. On the present record, the defendants have not met their initial burden.

### 7. *Miscellaneous Claims*

The Court has reviewed all other claims raised by the defendants that have not been elaborated on herein. Substantially for the reasons set forth in the government's brief, and for lack of showing, either on the merits or in fact, the claims must be rejected.

### CONCLUSION

Accordingly, with the exception of the issue of minimization for which a hearing was conducted on December 2, 1987, the motions to suppress the intercepted wire communications are DENIED. A ruling on the minimization issue shall follow.

It is SO ORDERED.