John D. Hudson, Des Moines, Iowa, for defendant-appellant Floyd Baker.

Amanda Dorr, Asst. U. S. Atty., Roxanne Barton Conlin, U. S. Atty., Des Moines, Iowa, for plaintiff-appellee.

Before BRIGHT, Circuit Judge, GIBSON, Senior Circuit Judge, and ROSS, Circuit Judge.

**UNITED STATES of America, Appellee,**

v.

**Floyd BAKER, Appellant.**

No. 80–2070.

United States Court of Appeals, Eighth Circuit.

Submitted March 10, 1981.

Decided June 12, 1981.

GIBSON, Senior Circuit Judge.

Appellant Floyd Baker appeals from a judgment finding him guilty of passing a counterfeit twenty-dollar federal reserve note, in violation of Title 18 U.S.C. § 472.[1] Baker argues that the district court should have granted his motion for a judgment of acquittal because the Government failed to prove beyond a reasonable doubt that he knew the bill was counterfeit and that he passed it with the intent to defraud. He also argues that the jury was erroneously instructed on the issue of the requisite intent under the statute. We agree that the Government's proof was deficient, and

1. Section 472 provides in part:

Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, * * * any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.

therefore reverse the judgment of the district court on that ground.

On July 9, 1980, in Des Moines, Iowa, Floyd Baker rode in a car to a convenience store named Git-N-Go. Baker went into the store and asked the sales clerk for two packs of cigarettes. In exchange for the cigarettes, Baker tendered a twenty-dollar bill. The sales clerk stated that the bill looked "funny." Baker responded that it "had been through the wash." The sales clerk accepted the twenty-dollar bill and gave Baker his change. The clerk then noted the license plate number of the car in which Baker left the store.

The clerk showed the twenty-dollar bill to his supervisor. They discussed it and decided to call the police. Baker was subsequently arrested. No counterfeit bills were found on him at that time.

On July 29, 1980, the grand jury returned a two-count indictment against Baker. Count I referred to the incident described above. Count II referred to a similar incident which allegedly occurred on the same day at a different store in Des Moines.

The jury for the trial of the cause was duly impanelled. However, on the first morning set for trial, October 8, 1980, it was impossible to locate a material witness without whose testimony the charge contained in Count II could not be proved. On motion of the Government, the court dismissed Count II. The Government decided, however, to proceed with the prosecution of Baker for the charge contained in Count I.

At trial, Jerry Weber, a Secret Service agent who is an expert in the investigation and detection of counterfeit currency, testified that the bill which was the subject of Count I was of "very poor quality." However, he also testified that certain characteristics of the bill, which enabled detection of its counterfeit nature, are not within the knowledge of a lay person. He testified that the bill was produced in 1970 or 1971 in Peoria, Illinois, and that it might have been in circulation since that time without detection, although he found that possibility unlikely.

At the close of the Government's evidence, defense counsel unsuccessfully moved for a judgment of acquittal. Following the jury's verdict of guilty, defense counsel renewed the motion and it was again overruled. Baker was sentenced to a term of imprisonment not to exceed three years.

In a counterfeiting case, section 472 requires the Government to prove that the defendant knew the bills were counterfeit and that the defendant had a general intent to defraud unknown third parties with the bills. *United States v. Berry*, 599 F.2d 267, 268 (8th Cir.), *cert. denied*, 444 U.S. 862, 100 S.Ct. 129, 62 L.Ed.2d 84 (1979); *United States v. Pitts*, 508 F.2d 1237, 1240 (8th Cir. 1974), *cert. denied*, 421 U.S. 967, 95 S.Ct. 1958, 44 L.Ed.2d 455 (1975). We are not unmindful of the fact that, on this appeal, the verdict must be sustained if there is substantial evidence to support it, taking the view most favorable to the Government. *E. g. Hamling v. United States*, 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974); *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). However, in the instant case, we find only two items of evidence which could have even questionably provided a basis upon which the jury could infer that Baker knew the bill was counterfeit. One was the appearance of the bill itself and the other was Baker's comment that the bill had been through the wash.

The counterfeit bill, introduced in evidence at trial, was a purplish color because it had been treated with ninhydrin in the process of examining it for fingerprints. Aside from the color of the bill, there was nothing about it that made it so obviously a counterfeit that we may assume guilty knowledge of anyone who possessed and transferred it. Therefore, the appearance of the bill passed by Baker, without more, cannot sustain the conviction.

Baker's comment, that the bill had been through the wash, is likewise insufficient to constitute evidence of guilty knowledge. Willfullness, intent, and guilty knowledge may be proved by circumstantial evidence.

*See United States v. Hicks,* 619 F.2d 752, 755 (8th Cir. 1980); *United States v. Arnold,* 543 F.2d 1224, 1225–26 (8th Cir. 1976), *cert. denied,* 429 U.S. 1051, 97 S.Ct. 765, 50 L.Ed.2d 768 (1977). However, Baker's statement hardly rises to the level of evidence at all. The statement could be logically construed in several different ways and there is absolutely no corroborating evidence to indicate that it was in any way intended to be an admission of knowledge that the bill was counterfeit.

It is well established that there is "no presumption of guilty knowledge arising from either mere possession or transfer of a spurious obligation." *United States v. Castens,* 462 F.2d 391, 393 (8th Cir. 1972), and cases cited therein; otherwise, innocent and unsuspecting holders of spurious bills would be caught in the criminal ambit. In the great majority of counterfeiting cases, circumstantial evidence is offered from which the jury can infer the requisite knowledge. *United States v. Barham,* 466 F.2d 1138, 1141 (9th Cir. 1972) (Koelsch, J., dissenting). However, circumstantial evidence may also fail to prove the relevant state of mind, either because the credibility of the witness is destroyed or "because the inference from the proven circumstances to the fact in issue is too speculative, or remote." *United States v. Nelson,* 419 F.2d 1237, 1240 (9th Cir. 1969), *as quoted in United States v. Barham, supra,* at 1141. We believe that in the instant case the inferences drawn by the jury were too speculative. It might well be that the dismissed Count II could have supplied additional circumstantial evidence on the question of Baker's awareness of the spurious nature of the bill he was passing, but that evidence cannot be considered by us since it was not produced and admitted into the case. Therefore, under the totality of the circumstances, no rational factfinder could have concluded beyond a reasonable doubt that Baker was aware of the counterfeit nature of the twenty-dollar bill. *See Jackson v. Virginia,* 443 U.S. 307, 313, 99 S.Ct. 2781, 2786, 61 L.Ed.2d 560 (1979); *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). On this record, we can-

not sustain Baker's conviction; we find reversible error in the trial court's refusal to grant Baker's motion for a judgment of acquittal.

Reversed.