**UNITED STATES of America, Appellee,**

v.

**Jens Roger OLSON, Appellant.**

**No. 82–1801.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 9, 1982.

Decided Jan. 14, 1983.

James M. Rosenbaum, U.S. Atty., John M. Lee, Asst. U.S. Atty., D. Minn., Minneapolis, Minn., for appellee.

Daniel M. Scott, Federal Public Defender, D. Minn., Minneapolis, Minn., for appellee.

Before HEANEY, ROSS and FAGG, Circuit Judges.

FAGG, Circuit Judge.

Jens Roger Olson was convicted by a jury on three counts of passing counterfeit money in violation of 18 U.S.C. § 472. He contends on appeal that the trial court abused its discretion in denying his motion for a continuance during trial, thus depriving his counsel of the opportunity to utilize exculpatory evidence: The government had two men in custody matching the physical descriptions given by the eyewitnesses in his case and possessing the same kind of counterfeit money. This evidence was not disclosed by the prosecutor until the government's case in chief was nearly over, notwithstanding a specific pretrial request for it by defense counsel. The defendant maintains that he was deprived of his due process right to a fair trial; accordingly, he argues his motion for new trial should have been granted.

The first and third counts of the indictment focus upon eyewitness identifications of defendant as the person who passed the counterfeit obligations in question. In each count a single $50 bill was passed at a retail store in the Twin City area by a male suspect. The suspect was described by store clerks and defendant was later apprehended. One of the clerks experienced difficulty in identifying defendant from a photographic display; however, both clerks identified defendant as the presenter at trial.

The second count of the indictment involves a different situation. The defendant was arrested on the premises of another Twin City area retail establishment after passing a $50 bill to one of its clerks. The main issue under this count is the defendant's knowledge, it being his contention that he obtained the bill at a bank and was unaware of its counterfeit character.

During oral argument before this court, the prosecutor acknowledged that shortly before the case went to trial he learned that two Minnesota men had been arrested in Kansas City with identical counterfeit bills in their possession. However, an evidentiary disclosure was not made by him until the government's case in chief was nearly complete. The disclosure was prompted by the fact that defense counsel had learned of these arrests from other sources and had immediately brought them to the trial court's attention. Defense counsel was able to glean from the limited information then available to him that the physical descriptions of the arrested men generally matched the descriptions given by the eyewitness clerks, and when the prosecutor produced head and shoulder photographs of two men there was a similarity of resemblance between one of the men and the photograph of the defendant that had been included in the photographic display. This placed defense counsel in a position where he either had to take as a verity a prosecutorial assurance based on second hand information that the hurriedly produced photographs were in fact the Kansas City arrestees and ignore his own secondary sources, or make his own investigation before completing the trial.

In response to the prosecutor's sketchy disclosure, defense counsel promptly moved for a continuance of several days so he could investigate the newly disclosed evidence and utilize it for his client's defense. However, the trial court denied the motion for continuance, the case was submitted to the jury on the same day, and guilty verdicts were returned the next morning. We recognize that *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) do not require the pretrial disclosure of material evidence as long as the ultimate disclosure is made before it is too late for the defendant to make use of the evidence. *See United States v. Allain*, 671 F.2d 248, 255 (7th Cir.1982). The problem in this case is whether the prosecutor's disclosure was made so late in the trial that the defendant could not take advantage of the benefits of the evidence in the absence of a continuance.

■ To determine whether the trial court abused its discretion in denying defendant's request for a continuance, we must decide whether defendant was materially prejudiced by the court's refusal to give his counsel time for investigation and preparation of what appeared facially to be significant evidence for the defense. *See United States v. Sheehy*, 670 F.2d 798, 799 (8th Cir.1982). Our review of the record satisfies us that there is such prejudice. This court has previously noted five factors that a trial court must balance in determining whether to grant a continuance. *See United States v. Bernhardt*, 642 F.2d 251, 252 (8th Cir.1981). It is our view that the trial court did not properly balance these factors in the context of the record that was before it when its ruling was made.

■ The jury's reaction to the eyewitness identification was at the heart of this case, not only on the issue of whether defendant was in fact the criminal actor, but also on the question of guilty knowledge. Insofar as the latter question is concerned, it is well established that mere possession of a counterfeit obligation is not sufficient to show guilty knowledge. *United States v. Baker*, 650 F.2d 936, 938 (8th Cir.1981). However, a critical inquiry bearing on the issue of guilty knowledge is whether the accused person has passed more than one counterfeit obligation. *United States v. Ritz*, 548 F.2d 510, 518 (5th Cir.1977). The evidence suppressed by the prosecutor until the trial was in its final stages had been specifically requested by the defendant in a pretrial motion. The evidence was material to the issues of identification and guilty knowledge and favorable to the defendant. It was the kind of evidence that might have affected the outcome of the trial.

If the prosecutor had not disclosed the exculpatory evidence in question until the trial was over, his total suppression of the evidence would have deprived the defendant of due process under *Brady* and *Agur*.

Correspondingly, where the prosecutor does not make his disclosure until the final stages of trial and it is too late for the defendant to make use of the evidence, a ruling which denies a timely motion for continuance has the same prejudicial impact upon due process. It is our view that the trial court's ruling seriously disadvantaged the defendant. It deprived his counsel of the opportunity to pursue a defense based upon mistaken eyewitness identification. The delay of trial sought by defense counsel was justifiable and a continuance should have been granted. See Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964).

The convictions are reversed and the case is remanded for a new trial.

ROSS, Circuit Judge, dissenting.

I dissent from the majority's conclusion that the district court committed reversible error in denying appellant's motion for a continuance. The district court has substantial discretion in granting or denying a motion for a continuance, and reversal is only warranted where there is a clear abuse of discretion in the circumstances of a particular case. See, e.g., United States v. Cohen, 583 F.2d 1030, 1045 (8th Cir.1978); United States v. Little, 567 F.2d 346, 348–49 (8th Cir.1977), cert. denied, 435 U.S. 969, 98 S.Ct. 1608, 56 L.Ed.2d 60 (1968). I agree with the majority that in the present case the determinative question is whether the defendant was materially prejudiced by the court's refusal to grant a continuance in order for counsel to investigate the evidence relating to other possible suspects. In the context of this case, it would appear that the existence of such prejudice as a result of denial of the continuance essentially depends on whether the allegedly exculpatory evidence (i.e., photographs of two men arrested for passing counterfeit bills in Kansas City) not disclosed to the appellant until late in the trial is viewed as material, i.e., "might have affected the outcome of

the trial." United States v. Agurs, 427 U.S. 97, 104, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342; see Scurr v. Niccum, 620 F.2d 186, 189 (8th Cir.1982).

After a thorough review of the record I am unable to conclude that the purportedly exculpatory evidence was material under the foregoing standards or that the appellant was materially prejudiced by the trial court's failure to grant a continuance to investigate that evidence. Unlike the majority, I do not believe that the photographs of the two men arrested in Kansas City with counterfeit fifty dollar bills in their possession show a resemblance to the appellant.[1] Furthermore, the evidence of appellant's identity as the person who passed the three counterfeit bills is overwhelming. Appellant was arrested while passing the counterfeit bill involved in Count II, and at least four witnesses provided detailed descriptions of appellant's clothing and appearance at that time which generally matched other witnesses' descriptions of the person who passed the counterfeit bills involved in Counts I and III. Significantly the description by a witness of the clothing worn by the customer involved in the Count I incident was virtually identical to the descriptions of the clothing worn by the customer in the Count II incident. Moreover, in both the Count I and Count II incidents the customer explained that he had recently obtained two fifty dollar bills from a bank and that he intended to use one of the bills for a 50th wedding anniversary gift for his parents. Finally, it should be noted that the incidents involved in Counts II and III occurred at the same shopping center at about the same time.

In light of this and the other evidence in the record, I do not believe that earlier disclosure of the purportedly exculpatory evidence or a continuance to investigate the two men arrested in Kansas City "might have affected the outcome of the trial." United States v. Agurs, supra, 427 U.S. at 104, 96 S.Ct. at 2397. Consequently, I

1. The trial court viewed these photographs prior to denying appellant's motion for a continuance. See Record at 199–204.

would find that the trial court did not abuse its discretion in denying appellant's motion for a continuance and I would affirm appellant's conviction on all counts.