### UNITED STATES of America

v.

**Alfredo MATOS–PERALTA, Hector B. Ramirez, Harry Torres, William Gonzalez–Benitez, a/k/a "Willie," and Eugene Jimenez, a/k/a "Jimmy," Defendants.**

**No. SS 88 Cr. 0153 (RWS).**

United States District Court, S.D. New York.

July 26, 1988.

782

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for U.S.; Peter B. Sobol, Asst. U.S. Atty., of counsel.

Gerald J. DiChiara, New York City, for defendant Alfredo Matos–Peralta.

Alan G. Polak, New York City, for defendant Harry Torres.

Thomas A. Manning, New York City, for defendant William Gonzalez Benitez.

## OPINION

SWEET, District Judge.

Defendants Harry Torres ("Torres"), William Benitez–Gonzalez, a/k/a "Willie" ("Benitez") and Alfredo Matos–Peralta ("Matos") have moved pursuant to Fed.R. Crim.P. 12 and 41 to suppress physical evidence seized and statements made by Benitez and Torres following their arrest for narcotics violations on January 14, 1988. Each of the moving defendants also seeks to sever his trial from that of his co-defendants and to compel the production of *Brady* material and the service of a bill of particulars. Benitez has also moved to dismiss the Indictment against him. Upon the findings and conclusions set forth below, the motions are denied.

*Background*

The Indictment recites that on January 14, 1988, at approximately 7:20 p.m., as prearranged by telephone, defendant Eugene Jimenez, a/k/a "Jimmy," ("Jimenez") met with Special Agent Thomas C. Slovenkay ("Slovenkay"), of the U.S. Drug Enforcement Administration ("DEA") acting in an undercover capacity at the intersection of 161st Street and Grand Concourse in the Bronx, New York. The purpose of the meeting was to complete the sale to Slovenkay, as previously arranged by Jimenez and Torres, of a kilogram of cocaine in exchange for $23,500, to be delivered and paid for, respectively, in four installments. After some preliminary conversation, Slovenkay gave Jimenez the first installment of $5,900. Shortly after 8:00 p.m., Jimenez left with the money, promising to return in approximately twenty minutes with a quarter of a kilogram of cocaine.

At approximately 10:20 p.m., Jimenez returned to Slovenkay with the entire kilogram. Shortly thereafter, Jimenez was arrested. After being advised of his constitutional rights, Jimenez stated that Torres

was in Benitez' apartment at 2845 University Avenue, Bronx, New York ("Apartment 4J") with Benitez and others waiting for him to return with the remainder of the purchase price.

Shortly thereafter, this information was communicated to other DEA agents who forcibly gained entry to Apartment 4J. Upon entering Apartment 4J, the agents found Benitez and Torres in the hall and living room, where they offered no resistance. They were placed under arrest. The agents secured the two defendants and the apartment. They also located the other two former occupants, defendants Matos and Hector B. Ramirez ("Ramirez"), who, upon hearing that the agents were attempting to enter Apartment 4J, had jumped out the fourth-floor bedroom window. Thereafter, at approximately 12:15 a.m., on January 15, 1988, Slovenkay and an Assistant United States Attorney, who joined the conversation from a telephone at another location, made an oral application over the telephone to Magistrate James C. Francis, IV for warrants to search Apartment 4J and Torres' apartment at 2230 University Avenue, Bronx, New York ("Apartment 2A"), where surveillance agents had seen Jimenez, Torres and Benitez earlier on January 14. At approximately 12:40 a.m., Magistrate Francis authorized a search of the two apartments. At that point, DEA agents began to search Apartment 4J, while other agents went to and searched Apartment 2A.

After concluding the search of Apartment 4J, DEA agents returned with Benitez and Torres to the DEA office at 26 Federal Plaza in Manhattan. There, after reading and executing a waiver of rights form, Benitez dictated and signed a three-page statement, which Agent Arnold R. Morin took down because Benitez had difficulty writing. Earlier that night at the DEA office, other agents had followed a similar procedure in advising Jimenez of his constitutional rights, having Jimenez read and execute a waiver of rights form and having Jimenez write down a four-page statement, which he signed.

In opposition to defendants' omnibus motions, the government contends that proper procedures were followed to obtain judicial authorization before any search of Apartment 4J or Apartment 2A was undertaken. The government also contends that both Benitez and Torres were administered *Miranda* warnings in Apartment 4J and that Benitez, in particular, was advised three times of his constitutional rights—including his right to remain silent and to have an attorney present before answering any questions—after which he voluntarily executed a waiver of those rights and made and signed a written statement. Finally, the government contends that it has timely given full discovery to Benitez and his co-defendants.

The defendants contend that the DEA agents' initial warrantless entry into Apartment 4J was not justified by exigent circumstances and that, therefore, all physical evidence seized from the apartment and all statements obtained pursuant to the arrests made therein must be suppressed. The defendants also contend that Slovenkay intentionally misled Magistrate Francis in procuring the telephonic warrant by stating that Apartment 4J had not yet been searched when in fact, according to a statement in Benitez' sworn affidavit, the agents had thoroughly searched the apartment immediately after entering it. The defendants seek a hearing on whether the telephonic warrant was rendered invalid as a result of Slovenkay's intentional misrepresentations. Finally, each defendant contends that post-arrest statements by his co-defendants are prejudicial to him and require severance of his trial.

*Conclusions*

Benitez' Motion to Dismiss the Indictment

■ Benitez contends that the indictment against him should be dismissed on the grounds that it is based primarily upon the hearsay statements of Jimenez. Benitez bears a heavy burden in seeking to dismiss the indictment at this stage of the proceedings. It is well settled in this Circuit that an indictment is "sufficient to try a defendant on the counts charged therein, ... satisfies the requirements of the fifth

amendment ... [and] cannot even be challenged on the ground that it is based on inadequate or incompetent evidence." *United States v. Contreras,* 776 F.2d 51, 54 (2d Cir.1985) (citing *Lawn v. United States,* 355 U.S. 339, 349, 78 S.Ct. 311, 317, 2 L.Ed.2d 321 (1958) and *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956)); *see also United States v. Estes,* 793 F.2d 465, 466–67 (2d Cir.1986) (mere fact that some incompetent or privileged testimony is heard seldom will invalidate an indictment); *United States v. Mourad,* 729 F.2d 195, 200 & n. 5 (2d Cir.1984) (fact that indictment is based solely on hearsay evidence will not require dismissal).

Indeed, the Supreme Court has refused to dismiss an indictment, even where it was supported by "very little evidence against the accused," apart from the incompetent evidence, to avoid "abuses of criminal practice [which] would be enhanced if indictments could be upset on such a ground." *Holt v. United States,* 218 U.S. 245, 248, 31 S.Ct. 2, 4, 54 L.Ed. 1021 (1910). As the Supreme Court has explained, in frequently quoted language directly responsive to Benitez' unsupported contention here:

> If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury.

*Costello v. United States,* 350 U.S. at 363, 76 S.Ct. at 408–09; *accord United States v. Contreras,* 776 F.2d at 54.

The Indictment charges Benitez, *inter alia,* with participation in a conspiracy to sell narcotics, possession of narcotics, and unlawful possession of a weapon. Some of the evidence that provides the basis for these charges was seized at Benitez' apartment; other evidence was obtained from recorded telephone conversations of Jimenez and Torres, two of the alleged co-conspirators. Benitez has not established a basis to dismiss the Indictment as to him, and his motion in this respect is denied.

**The Warrantless Arrests of Benitez and Torres**

Defendants next contend that the unannounced, warrantless entry of DEA agents into Apartment 4J was in violation of their constitutional rights. The government contends that exigent circumstances justified the warrantless entry and arrests, relying on *Steagald v. United States,* 451 U.S. 204, 221, 101 S.Ct. 1642, 1652, 68 L.Ed.2d 38 (1981) (search) and *Payton v. New York,* 445 U.S. 573, 583, 100 S.Ct. 1371, 1378, 63 L.Ed.2d 639 (1980) (arrest).

■ The Second Circuit has cautioned that courts should not take "too narrow a view of what constitutes exigent circumstances." *United States v. Martinez–Gonzalez,* 686 F.2d 93, 100 (2d Cir.1982). Generally, "exigent circumstances" justify a warrantless arrest where the arresting agents had probable cause to enter the premises and a reasonable belief that they were obliged to act before a warrant could be obtained. *Id.* at 100–01. The reasonableness of the agents' beliefs and the degree of the exigency turn on an assessment of a variety of factors, including: (1) the gravity of the crime, (2) the likelihood that the suspects were armed, (3) whether there was a clear showing of probable cause to believe that a crime has been committed, (4) the likelihood that the subject was in the premises being entered, (5) the likelihood that the suspect would escape if not quickly apprehended, and (6) whether the entry was peaceful. *United States v. Cattouse,* 846 F.2d 144, 146 (2d Cir.1988); *United States v. Reed,* 572 F.2d 412, 424 (2d Cir.), *cert. denied,* 439 U.S. 913, 99 S.Ct. 283, 58 L.Ed.2d 259 (1978). This list of factors to be considered by the court

> is illustrative, not exclusive; other factors may be relevant. Moreover, the absence or presence of particular factors is not conclusive. The determination of exigent circumstances *vel non* necessarily turns upon whether in light of all the facts of the particular case there was an "urgent need" that "justif[ies]" a warrantless entry.

*United States v. Martinez–Gonzalez*, 686 F.2d at 100 (quoting *Dorman v. United States*, 435 F.2d 385, 391 (D.C.Cir.1970)).

■ After Jimenez' arrest on January 4, the DEA agents could reasonably have believed that his associates would wait in Apartment 4J for his return for only a very limited time. As Slovenkay later advised Magistrate Francis, Slovenkay's course of dealing, including recorded telephone conversations with Jimenez and Torres, supported the agent's belief that these men were trafficking in cocaine, "which is a most serious offense, often involving violence." *United States v. Martinez–Gonzalez*, 686 F.2d at 100–01. In addition, surveillance agents had earlier seen Jimenez, Benitez, and Torres leave 2230 University Avenue and drive to 2845 University Avenue, where they went to Apartment 4J. They knew Jimenez had then left Apartment 4J and delivered one kilogram of cocaine to Slovenkay, just before his arrest. The agents, therefore, had reasonable cause to believe that the occupants of Apartment 4J were waiting for Jimenez to return with the remainder of the money and that they were possibly armed. "[T]o substantial dealers in narcotics, firearms are as much 'tools of the trade' as are most commonly recognized articles of narcotics paraphernalia." *United States v. Oates*, 560 F.2d 45, 62 (2d Cir.1977) (quoting *United States v. Wiener*, 534 F.2d 15, (2d Cir.), *cert. denied*, 429 U.S. 820, 97 S.Ct. 66, 50 L.Ed.2d 80 (1976)).

Moreover, Jimenez, after being advised of his *Miranda* rights, had informed the agents that "there were four individuals waiting for him to return with the remainder of the money for the one kilo." It was reasonable for the agents to assume that Jimenez' failure to return promptly with the money would make the occupants of Apartment 4J suspicious and that any delay by the agents in entering the apartment would have afforded them an opportunity to arm themselves more heavily.[1] *See, e.g., United States v. Crespo*, 834 F.2d 267, 271 (2d Cir.1987), *cert. denied*, —— U.S. ——,

108 S.Ct. 1471, 99 L.Ed.2d 700 (1988). "Thus, the greater the delay in arresting [the occupants of apartment 4J], the greater the danger to the arresting agents and the community." *United States v. Martinez–Gonzalez*, 686 F.2d at 101 (citing *Dorman v. United States*, 435 F.2d at 392). In addition, the agents could reasonably assume that any additional delay "would be likely to result in the destruction of evidence," *United States v. Martinez–Gonzalez*, 686 F.2d at 101 (citations omitted); *see also United States v. Cattouse*, 846 F.2d 144, 146–47 (agents' fear that "marked buy money" may be removed from the premises is additional circumstance in support of the district court's finding of exigent circumstances).

Defendant Benitez' reliance on *United States v. Segura*, 663 F.2d 411 (2d Cir. 1981), and *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), is unavailing. *Segura* is distinguishable since there the agents "had no reasonable belief that anyone was in the apartment" before entering. *Segura*, 663 F.2d at 415. Here, the agents saw the defendants walk into the apartment building and in addition had been informed by Jimenez that "that there were four individuals waiting for him" in Apartment 4J. The Second Circuit has specifically noted that, "even under *Payton*, entry into a home to make an arrest on probable cause may be justified where exigent circumstances exist." *United States v. Crespo*, 834 F.2d at 270 (citations omitted).

In light of the exigent circumstances discussed above, the agents' actions were reasonably necessary under the circumstances, and defendants' motions to suppress on the basis of the warrantless entry and arrests are denied.

The Motion to Suppress Physical Evidence

The defendants have moved to suppress the physical narcotics, paraphernalia, currency, and the semi-automatic firearm seized from Apartments 2A and 4J. In his affidavit, Benitez contends that the DEA agents immediately began to search Apart-

---

1. Here it should be noted that Benitez has been indicted with the unlawful possession and use

of a semi-automatic 9–mm, Uzi. (Indictment; Counts Four, Five and Six).

ment 4J after forcing the door and arresting himself and Torres. Benitez argues that Slovenkay's statement to Magistrate Francis that the apartment had not yet been searched was, therefore, false and misleading. Relying on *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed. 2d 667 (1978) and *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), Benitez contends that the evidence seized pursuant to the search that followed the Magistrate's telephonic warrant should be suppressed or, alternately, that a hearing should be held to determine whether the warrant was procured through false statements by the agent.

In *Franks v. Delaware*, 438 U.S. at 155–56, 98 S.Ct. at 2676, the Supreme Court held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

The Court further held in *United States v. Leon*, 468 U.S. at 923, 104 S.Ct. at 3421, that suppression "remains an appropriate remedy if the Magistrate or Judge in issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." Here, the defendants contend that in the absence of the false statements Slovenkay made in his oral application for a warrant on January 15, 1988, the Magistrate could not have found probable cause for the search. *See United States v. Ferguson*, 758 F.2d 843, 849 (2d Cir.1985).

"There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant." *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978). In challenging that presumptive validity, a defendant cannot rely on speculative and conclusory claims to justify a request for a hearing.

*Id.* All statements claimed to be false or intentionally misleading "must be accompanied by an offer of proof." *Id.*

Benitez' sworn claim that Slovenkay lied to the Magistrate when he stated at the time of the warrant application that the house had not been searched raises an issue of fact as to the truthfulness of the agent's statement in this respect. It should be noted that according to the transcript of Slovenkay's oral application, the agent informed the Magistrate that after gaining entry the agents had secured the apartment, which may explain Benitez' impression that the agents had searched the apartment. However, even if Benitez were correct in claiming that the apartment was searched prior to the application for the warrant, the evidence seized pursuant to the authorized search would still not require suppression for two reasons.

■ First, as the Second Circuit stated in *United States v. Ferguson*, 758 F.2d 843, 849 (2d Cir.1985):

> An affidavit in support of a search warrant application that contains both lawful and tainted allegations is valid if the lawful information, considered independently, supports probable cause. The ultimate inquiry on a motion to suppress is not—as defendants contend—whether the affidavit contains false allegations or material omissions, but whether after putting such aside, there remains a residue of independent and lawful information sufficient to support probable cause. *United States v. Lace*, 669 F.2d 46, 48–49 (2d Cir.), *cert. denied*, 459 U.S. 854, 103 S.Ct. 121, 74 L.Ed.2d 106 (1982).

In considering what constitutes probable cause, the court may base its finding "upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." *Franks v. Delaware*, 438 U.S. at 165, 98 S.Ct. at 2681.

The transcript of Slovenkay's oral application for a warrant reveals that the agent fully informed the Magistrate of the investigative background to the agent's purchase of one kilogram of cocaine from Jim-

enez. The agent recounted, *inter alia,* that following the initial payment of $5,900 to Jimenez, surveillance agents had observed Jimenez, Torres and Benitez leave Apartment 2A and drive to Apartment 4J. After two other individuals had been observed arriving at Apartment 4J, Jimenez appeared and returned to Slovenkay's vehicle with one kilogram of cocaine. After he was arrested, Jimenez told Slovenkay that "there were four individuals waiting for him to return with the remainder of the money for the one kilo." Slovenkay told the Magistrate that Jimenez had stated that he had given the $5,900 to Torres, although the agent did not know whether the money had been exchanged at Apartment 2A or 4J. The agent also informed the Magistrate that upon securing Apartment 4J, the agents had discovered "a couple of grams of suspected cocaine on a living room table in plain view." In response to the Magistrate's inquiry as to why the premises could not be secured pending a written application, the agent stated that the door had been caved in at the time of entry and that the bedroom windows had been broken during the attempted flight of two of the suspects. Finally, the agent told the Magistrate that residents in the hallway of Apartment 4J had told the agents that they suspected drug dealing had been going on in that particular apartment for two years. All of these statements, which are independent from the agent's statement concerning whether the apartment had previously been searched, constituted "independent and lawful information to support probable cause." *United States v. Ferguson,* 758 F.2d at 849.

■ Second, even assuming that the search had gone forward prematurely before the warrants had issued and that some of the seized objects had been discovered during that search, since it has been determined that a valid search warrant was later obtained, all items previously found would be admissible under the "inevitable discovery" exception to the exclusionary rule endorsed by the Supreme Court in *Nix v. Williams,* 467 U.S. 431, 448, 104 S.Ct. 2501, 2511, 81 L.Ed.2d 377 (1984). As Judge

Lumbard explained in *United States v. Whitehorn,* 829 F.2d 1225, 1230 (2d Cir. 1987):

> This exception to the exclusionary rule allows evidence initially detected as the result of unlawful government conduct to be introduced nonetheless "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." *Nix,* 467 U.S. at 444 [104 S.Ct. at 2509], . . . . This exception, the Court made clear, was not a revolutionary concept but rather the logical extension of another, the independent source doctrine.

Here, since the warrants which were obtained from Magistrate Francis covered the areas in which the drug paraphernalia were located, a high degree of certainty exists that the agents would . have ultimately found the evidence.

The defendants' motion to suppress the physical evidence found in Apartment 4J and 2A are denied.

### The Motion to Suppress the Post–Arrest Statements of Benitez and Torres

■ The government contends that Benitez' motion to suppress his post-arrest statement should be denied because he voluntarily signed a waiver of his rights. While not always necessary to establish waiver of one's rights, "[a]n express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of the waiver." *North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed. 2d 286 (1979); *see also United States v. Hall,* 724 F.2d 1055 (2d Cir.1983). The Supreme Court has even found a valid waiver to exist by merely "inferr[ing] from the actions and words of the person interrogated." *North Carolina v. Butler,* 441 U.S. at 373, 99 S.Ct. at 1757. Here, there is no need to infer that Benitez waived his rights prior to making his post-arrest statement since the government has submitted Benitez' signed statement acknowledging the waiver of his rights. Benitez has not challenged the waiver by stating that he

signed under pressure or was coerced. Therefore, Benitez' motion to suppress is denied.

With respect to Torres' motion, at this stage of the proceedings neither the government nor Torres has produced any evidence of post-arrest statements by Torres. Therefore, his motion to suppress is premature. If and when the government indicates that it intends to use post-arrest statements by Torres against him at trial, Torres will be permitted to renew his objection.

The Motion for a James Hearing

██ The defendants seek a *James* hearing in this case, requiring the government to establish *in limine* the existence of a conspiracy and its membership before co-conspirator declarations are received at trial pursuant to Fed.R.Evid. 801(d)(2)(E). *See United States v. James*, 576 F.2d 1121, 1127–32 (5th Cir.1978), *modified en banc*, 590 F.2d 575 (5th Cir.), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). Under the law of this Circuit, however, a *James* hearing is not required.

In *United States v. Wilson*, 565 F.Supp. 1416, 1437 (S.D.N.Y.1983), *aff'd*, 750 F.2d 7 (2d Cir.1984), *cert. denied*, 479 U.S. 839, 107 S.Ct. 143, 93 L.Ed.2d 85 (1986), Judge Weinfeld denied defendants' motion for a *James* hearing, stating:

> Under *United States v. James*, the Fifth Circuit requires a pretrial hearing before hearsay statements of co-conspirators may be received as against one another. In our Circuit, however, the matter is admissible under the trial court's determination, made at the close of the government's case, of the sufficiency of the evidence, independent of the hearsay testimony, that the alleged co-conspirator participated in the conspiracy. (footnote omitted).

*See also United States v. Ianniello*, 621 F.Supp. 1455, 1478 (S.D.N.Y.1985), *aff'd*, 808 F.2d 184 (2d Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 3229, 97 L.Ed.2d 736 (1987) ("Defendants would require this Court to undertake a mini-trial, significantly prolonging the proceedings in the case and affording the defendants a complete preview of the government's evidence. The conditional receipt of hearsay is a far better solution"). Chief Judge Brieant in *United States v. Feola*, 651 F.Supp. 1068, 1130 (S.D.N.Y.1987) similarly denied defendants' request for a *James* hearing and cautioned:

> At this late date, a motion for a *James* hearing in this Circuit must be regarded as frivolous. Defendants who want *James* hearings should so conduct their business as to be tried in the Fifth or Eleventh Circuits.

It is "well-settled that declarations that are otherwise hearsay may nonetheless be provisionally admitted pursuant to Rule 801(d)(2)(E)...." *United States v. Margiotta*, 688 F.2d 108, 136 (2d Cir.1982), *cert. denied*, 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983); *see, e.g., United States v. Mastropieri*, 685 F.2d 776, 787–89 (2d Cir.), *cert. denied*, 459 U.S. 945, 103 S.Ct. 260, 74 L.Ed.2d 203 (1982). The defendants have offered no reason to depart from the Second Circuit's clear rule permitting such statements to be admitted "subject to connection" during the course of trial. The request for a *James* hearing is denied.

The Motion for Severance

Benitez, Matos and Torres have moved for separate trials under Fed.R.Crim.P. 14, which provides, in pertinent part:

> If it appears that a defendant is prejudiced by a joinder of offenses or of defendants in an indictment ..., the Court may ... order separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

The disposition of a motion for severance under Rule 14 is entrusted to the sound discretion of the trial court. *See United States v. Nersesian*, 824 F.2d 1294, 1303 (2d Cir.1987).

Well-established principles guide courts in the exercise of this discretion. As Judge Weinfeld explained in a recent multi-defendant case:

> Any analysis of ... requests for severance [under Rule 14] must begin from the position, repeatedly expressed in the

decisions of our Court of Appeals, that defendants who are indicted together will normally be tried together. *United States v. Ianniello,* 621 F.Supp. at 1477. Moreover, the presumption in favor of a joint trial is strengthened when, as here, "the crime[s] charged involve a common scheme or plan." *United States v. Persico,* 621 F.Supp. 842, 852 (S.D.N.Y. 1985) (quoting *United States v. Girard,* 601 F.2d 69, 72 (2d Cir.), *cert. denied,* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979)); *see also United States v. Castellano,* 610 F.Supp. 1359, 1412 (S.D.N.Y.1985) (the government is ordinarily permitted to try defendants in a joint trial "where proof of many elements of the charges against all defendants is based upon the same evidence and acts"). In addition, a joint trial prevents the delay associated with *seriatim* prosecutions and therefore serves the interests of "both the government and the accused." *United States v. McGrath,* 558 F.2d 1102, 1106 (2d Cir.1977), *cert. denied,* 434 U.S. 1064, 98 S.Ct. 1239, 55 L.Ed.2d 765 (1978); *see also United States v. Lyles,* 593 F.2d 182, 191 (2d Cir.1979) (as a general rule persons jointly indicted should be jointly tried to "[conserve] judicial resources, [alleviate] the burdens on citizens serving as jurors and [avoid] the necessity of having witnesses reiterate testimony in a series of trials") (quoting *United States v. Borelli,* 435 F.2d 500, 502 (2d Cir.1970)).

In a recent decision, the Supreme Court strongly reaffirmed the presumption in favor of joint trials:

> It would impair both the efficiency and the fairness of the criminal justice system to require ... that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability—advantages which sometimes operate to the defendant's benefit. Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.

*Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 1708, 95 L.Ed.2d 176 (1987) (footnote omitted).

■ Thus, to warrant a severance, each defendant must meet the "heavy burden," *United States v. Sotomayor,* 592 F.2d 1219, 1227 (2d Cir.), *cert. denied,* 442 U.S. 919, 99 S.Ct. 2842, 61 L.Ed.2d 286 (1979), of showing that he will be so severely prejudiced by a joint trial that he will in effect be denied a fair trial. *United States v. Persico,* 621 F.Supp. at 852. In this regard, a defendant must demonstrate "substantial prejudice from a joint trial, not just a better chance of acquittal at a separate one." *United States v. Fantuzzi,* 463 F.2d 683, 687 (2d Cir.1972) (quoting *United States v. Borelli,* 435 F.2d at 502). Finally, a defendant must show that the prejudice resulting from joinder is so compelling that the trial court will be unable to afford protection. *Cf. United States v. Ricco,* 549 F.2d 264, 274 (2d Cir.), *cert. denied,* 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977). As Judge Weinfeld wrote in *United States v. Kahaner,* 203 F.Supp. 78, 81–83 (S.D.N.Y.1962), *aff'd,* 317 F.2d 459 (2d Cir.), *cert. denied,* 375 U.S. 836, 84 S.Ct. 73, 74, 11 L.Ed.2d 65 (1963):

> The ultimate question is whether, under all the circumstances of the particular case, as a practical matter, it is within the capacity of the jurors to follow the court's admonitory instructions and accordingly to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct. In sum, can the jury keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to him? If so, though the task be difficult, severance should not be granted.

■ The defendants base their requests for severance on the claim that the use at trial of their co-defendants' post-arrest statements will be prejudicial to their individual defenses. In *Bruton v. United*

790

*States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court held that a co-defendant's Sixth Amendment right to confront witnesses against him is violated only when the admission of statements by a non-testifying co-defendant is "powerfully incriminating" of or "devastating" to the defendant. It is well-settled, however, that a post-arrest statement of one defendant may be admitted against him at a joint trial without violating a co-defendant's right of confrontation if the statement does not "clearly inculpat[e]" the co-defendant or is not "vitally important" to the government's case against him. *United States v. Wingate*, 520 F.2d 309, 313 (2d Cir.1975), *cert. denied*, 423 U.S. 1074, 96 S.Ct. 858, 47 L.Ed.2d 84 (1976); *see, e.g., United States v. Marin*, 669 F.2d 73, 83 (2d Cir.1982); *United States v. Perry*, 643 F.2d 38, 51 (2d Cir.), *cert. denied*, 454 U.S. 835, 102 S.Ct. 138, 70 L.Ed.2d 115 (1981). For a statement to be "clearly inculpatory," the Second Circuit has established that the co-defendant's statement "standing alone" must clearly inculpate the defendant with the crime. *United States v. Slocum*, 695 F.2d 650, 655 (2d Cir.1982), *cert. denied.*, 460 U.S. 1015, 103 S.Ct. 1260, 75 L.Ed.2d 487 (1983). Where the statement is not clearly inculpatory, the trial judge can adequately safeguard the second defendant's confrontation rights by instructing the jury that the statement is to be considered only against the first defendant. *United States v. Wingate*, 520 F.2d at 313; *see also United States v. Cusumano*, 429 F.2d 378, 381 (2d Cir.), *cert. denied*, 400 U.S. 830, 91 S.Ct. 61, 62, 27 L.Ed.2d 61 (1970).

Here, the post-arrest statement of Benitez, to which defendant Matos primarily objects, does not contain any reference to cocaine or any other illegal substance. Although Benitez' statement does refer to a black man wearing a beard who was present at Apartment 4J and who later jumped out of the window of the apartment, these statements standing alone do not clearly inculpate the defendant with the crimes charged in the indictment. *See United States v. Slocum*, 695 F.2d at 655. Only when combined with other evidence

that establishes the existence of a drug conspiracy do Benitez' statements tend to implicate Matos. *See United States v. Wingate*, 520 F.2d at 314.

However, the post-arrest statement of Jimenez does contain certain references to Matos, Torres and Benitez which directly connect these defendants to the sale and distribution of cocaine. For example, on page four of Jimenez' statement, he states: "My personal feeling is that Alfredo [Matos] got the Coke pass it to Willie [Benitez] who passed it to Harry [Torres] and then to my hands." This statement, standing alone, does independently implicate the defendants in the alleged crime. However, whether this statement will prove to be vitally important to the prosecution's case cannot be determined at this stage of the proceedings. Therefore, whether these portions of Jimenez' statement will be redacted will be decided prior to their introduction at trial, when the nature and extent of the related other evidence is more fully known. *Cf. Richardson v. Marsh*, 107 S.Ct. at 1708.

The motions to sever are denied on the condition that certain portions of Jimenez' post-arrest statement may be redacted prior to its introduction at trial.

The Request for a Bill of Particulars and Advance Production of Brady Material

Defendants have also moved for early disclosure of materials required under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), for disclosure of the prior convictions and prior bad acts which the government intends to offer at trial for impeachment purposes under Fed.R.Evid. 404(b), 608 and 609, and for a bill of particulars.

The law is clear that *Brady* establishes no general right to pretrial discovery and gives rise to no pretrial remedies. *See Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 845, 51 L.Ed.2d 30 (1977); *United States v. Evanchik*, 413 F.2d 950, 953 (2d Cir.1969). "Neither *Brady* nor any other case ... requires that disclosure under *Brady* must be made before trial." *United States ex rel. Lucas v. Regan*, 503

F.2d 1, 3 n. 1 (2d Cir.1974), *cert. denied,* 420 U.S. 939, 95 S.Ct. 1149, 43 L.Ed.2d 415 (1975). Moreover, due process requires only that a defendant receive such information before it is too late for him to make use of it at trial. *United States v. Olson,* 697 F.2d 273, 275 (8th Cir.1983); *see also United States v. Shoher,* 555 F.Supp. 346, 352 (S.D.N.Y.1983) (accused to receive *Brady* material in time to permit effective " 'evaluation, preparation, and presentation at trial' ") (quoting *United States v. Deutsch,* 373 F.Supp. 289, 290 (S.D.N.Y. 1974)). Here, the defendants have not set forth any grounds that would warrant a court order directing the production of *Brady* materials at this time.

■ With respect to defendants' requests for prior bad acts and convictions, the burden is on the defendants to move *in limine* at a future time with specific reasons for the exclusion of evidence of prior bad acts or convictions under Rules 608 and 609 which govern the admissibility of prior bad acts and convictions for impeachment purposes. As to Rule 404(b), the government has agreed to disclose the substance of any prior bad acts before offering them. Rule 404(b), however, sets no minimum time for action by the government in this request, nor would any time limit be appropriate, since the evidence the government wishes to offer may well change as the proof and possible defenses crystallize.

Finally, in opposition to the defendants' motion for a bill of particulars, the government points to its June 6, 1988 discovery letter as proof that the government has already provided a long list of evidence pursuant to defendants' request. The government contends that any additional requests for information outside that already provided for in the Indictment or in the discovery which the government has already provided or agreed to provide are simply improper.

■ The proper scope and function of a bill of particulars is to furnish facts supplemental to those contained in the indictment which are necessary to apprise the defendant of the charges against him with sufficient precision so as to enable him to prepare his defense, to avoid unfair surprise at trial, and to preclude a second prosecution for the same offense. *United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir.1987). "A bill of particulars should only be required where the charges of an indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Leonelli,* 428 F.Supp. 880, 882 (S.D.N.Y. 1977). The ultimate test must be whether the information sought is necessary, not whether it is helpful. *See United States v. Leighton,* 265 F.Supp. 27, 35 (S.D.N.Y. 1967), *aff'd,* 386 F.2d 822 (2d Cir.1967). A bill of particulars is not a general investigative tool for the defense, *United States v. Salazar,* 485 F.2d 1272 (2d Cir.1973), *cert. denied,* 415 U.S. 985, 94 S.Ct. 1579, 39 L.Ed.2d 882 (1974), nor is it a device to compel disclosure of the government's evidence prior to trial. *See, e.g., United States v. Gottlieb,* 493 F.2d 987, 994 (2d Cir.1974). With respect to conspiracy charges in particular, since the government is not required to prove exactly when or how a conspiracy was formed or when or how a particular defendant joined the scheme, and as the circumstantial proof on which the government usually relies to prove the existence of a scheme often does not reveal such details, the courts have consistently rejected demands for particulars as to the formation of a conspiracy or the entry into the conspiracy of a particular defendant or confederate. *See United States v. Politi,* 334 F.Supp. 1318 (S.D.N.Y. 1971), *aff'd,* 516 F.2d 897 (2d Cir.), *cert. denied,* 423 U.S. 801, 96 S.Ct. 8, 46 L.Ed.2d 244 (1975).

Here, the Indictment gives adequate notice to the defendants, in particular Benitez who is charged in eight of the eleven counts, of the crimes of which they are accused. The Indictment identifies the members and purposes of the alleged conspiracy and sets forth twelve overt acts, giving dates and places, that were taken in furtherance of the alleged conspiracy. In light of the information set forth in the Indictment and the discovery that already has been made available to the defendants,

and in recognition of the government's continuing obligation to provide discovery where appropriate, the defendants' request for a bill of particulars is denied.

Upon the findings and conclusions set forth above, the defendants' motions are denied. The parties are directed to attend a pretrial conference at a time to be selected by them this week.

It is so ordered.